IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MIKE TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:06-cv-273 |
| ) | |
| CITY OF GATLINBURG, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This civil action is before the court on the defendant's second motion for summary judgment [doc. 32].[1] The plaintiff has responded to the motion [doc. 35], and the defendant has filed a reply brief [doc. 39]. The court finds that oral argument on the motion is not necessary, and the motion is ripe for the court's consideration. For the reasons discussed below, the defendant's motion will be denied.

In his complaint, the plaintiff alleges that he has been the target of retaliation by his employer since his participation in a Fair Labor Standards Act

---

[1] The court granted the defendant's first motion for summary judgment after the plaintiff failed to respond, but at the request of the plaintiff vacated its order and allowed the parties to complete discovery. The defendant withdrew its first motion for summary judgment, and this second motion follows the completion of discovery.

("FLSA") case filed in 1989. The plaintiff claims that he was wrongfully disciplined in 2004, and in 2005 he was denied an opportunity to test for the position of Chief of the Gatlinburg Fire Department for reasons that were pretext for unlawful discrimination and retaliation in violation of 29 U.S.C. § 215(a)(3). He claims that his participation in the 1989 FLSA case removed him from consideration for Fire Chief. He seeks compensatory and punitive damages.

**Factual Background**

The plaintiff began working for the Gatlinburg Fire Department in 1977. In 1989, the plaintiff and nine other employees of the Fire Department filed suit against the City of Gatlinburg under the FLSA claiming underpayment of straight time and overtime wages as required by the Act. The lawsuit was resolved by consent decree. Cindy Ogle was the City Manager at the time the lawsuit was filed, and she remains in her position today.

The plaintiff's personnel record shows that he was promoted to Lieutenant in 1993 and to Captain in 1998. In May 2002, a performance improvement plan was issued to the plaintiff, and in March 2004, a Disciplinary Action was issued "on the grounds of severe lack of communication and supervision as well as failure to address problems on the shift" the plaintiff supervised. The plaintiff was suspended without pay for sixty-four hours and

2

placed on six-months probation. The plaintiff did not appeal or otherwise challenge the Disciplinary Action.

In 2005 a job vacancy listing for Fire Chief was posted. Janet Curry, the human resources director for the City, stated in her deposition that she was a member of the review committee who reviewed the applications and selected the candidates for Fire Chief. She stated that initially there were five internal candidates for the position, one of whom was not considered because he was on probation. There were also some external applications. Ms. Curry admitted that none of the four internal candidates met the minimal qualifications of the job; nevertheless two were recommended by the committee to proceed in the selection process in spite of their lack of qualifications. When asked about this, she stated:

> Q    Let me ask you this: Were any of the internal candidates allowed to attend that assessment?
>
> A    Yes.
>
> Q    If they weren't qualified, why were they allowed to do that?
>
> A    Because none of them were qualified . . . we decided that there were two that were more qualified than the other two.

Two of the external candidates were chosen by the review committee to continue the selection process, also.

Ms. Curry stated that the plaintiff's lack of a college degree was one of the reasons that he was not allowed to proceed; however, three of the four candidates who did continue also did not have college degrees. In fact, the person chosen, an external candidate, does not have a college degree. Ms. Curry admitted that the plaintiff had the most supervisory and training experience of all the candidates. Nevertheless, the review committee determined that the plaintiff would not be recommended for the position based on its review of the plaintiff's personnel file. The letter to the plaintiff states in relevant part:

> [A]fter careful review and consideration of your application materials, we have selected other candidates whose qualifications more closely meet our position requirements and needs. Specifically, review of your personnel file reveals disciplinary action that shows a lack of responsible leadership. Additionally, your education and your leadership experience is not equivalent to meet the job requirements.

The letter was signed by Cindy Ogle, the City Manager. She testified in her deposition that she was the sole decision-maker for the position of Fire Chief.

The plaintiff submitted several affidavits in his response to the defendant's motion for summary judgment. Angela White, a former secretary to Janet Curry and back-up secretary for Cindy Ogle for eleven years beginning in 1990, stated in her affidavit that she worked right outside Ms. Ogle's door, and she heard Ms. Ogle repeatedly refer to the plaintiffs in the 1989 lawsuit in a

4

derogatory fashion; *e.g.*, she referred to them as "those sorry SOBs." Elizabeth Teague, a Gatlinburg firefighter, stated in her affidavit that in 2006, Ms. Curry told her that the pay for firefighters would be better "if it had not been for the lawsuit over wages."

Finally, the plaintiff also submitted the affidavit of Jerry Brown, a former firefighter. He, like the plaintiff, was one of the ten firefighters who sued the City in 1989. Sometime between late 2000 and summer 2001, he went to City Hall to check on a zoning matter related to some commercial property he owned. He met with Cindy Ogle in her office.

> During the course of that meeting, Cindy Cameron Ogle asked me who in the fire department I thought was qualified to become the next chief of the Gatlinburg City Fire Department. I responded that the only man qualified for that position was Mike Taylor. Ms. Cameron's [Ogle] response to me was, "No, the people of Gatlinburg would never put up with that." I then asked, "Why?" She responded, "Well, you were a part of the lawsuit, too. People around here would not sit still for having somebody who sued the city as Fire Chief." I responded to her, "Well, we won didn't we?"

## **Legal Discussion**

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

5

law." As the Supreme Court stated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), this "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Thus, the moving party's burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. In order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support his or her claim or demonstrate that there is a genuine material factual dispute; that is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party. *Id.* at 324.

Section 215(a)(3) of Title 29, United States Code, provides that it shall be unlawful for a person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." The burden-shifting analysis of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to FLSA claims of retaliation. *See Adair v. Charter County of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). In order to establish a *prima facie* case of retaliation under the FLSA, the plaintiff must prove that "(1) he or she engaged in a protected activity under the FLSA; (2) his

6

or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected activity and the adverse employment action." *Id.*

If the plaintiff is able to meet this burden, a presumption is created that the employee was subjected to unlawful retaliation. *Id.* The burden then shifts to the employer to set forth a legitimate, non-discriminatory reason for taking the adverse employment action. *Id.* The plaintiff then has an opportunity to rebut the employer's reason by showing that it is a pretext for retaliation. *Id.*

The only element of the *prima facie* case at issue is whether the plaintiff has come forward with sufficient evidence of a causal connection between his protected activity and the adverse employment action. "In order to demonstrate a causal connection, 'plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action.'" *Id.* at 490 (quoting *Allen v. Michigan Dept. of Corr.*, 165 F.3d 405, 413 (6th Cir. 1999)).

The defendant argues that no inference of retaliation is raised because of the fifteen-year gap between the FLSA lawsuit and the rejection of the defendant's application for Fire Chief. One of the factors relevant to the issue of causation is the timing of the adverse employment action relative to the plaintiff's

7

FLSA activities. *Id.* The defendant points to numerous cases that have held that a gap of even a few months is insufficient to raise the inference of retaliation.

In this case, however, the fifteen-year gap is not the issue. The plaintiff has presented evidence that the lawsuit was very much on Ms. Ogle's mind. According to the affidavits submitted by the plaintiff, Ms. Ogle used disparaging language when referring to the firefighters who brought the suit, and she told Brown that the plaintiff would not be considered for Fire Chief because he was a party to the lawsuit. As late as 2006, Ms. Curry blamed the lawsuit for the firefighters' low pay. Keeping in mind that Ms. Curry was on the reviewing committee and Ms. Ogle was the sole decision-maker for the Fire Chief position, the plaintiff has provided sufficient evidence from which an inference could be drawn that the plaintiff's participation in the 1989 lawsuit was the reason why his application for Fire Chief was rejected.

The defendant argues that Brown's evidence is immaterial because it does nothing to help establish that the plaintiff's participation in the 1989 lawsuit was the "immediate cause" of the adverse employment actions. *See Reich v. Davis*, 50 F.3d 962, 965-66 (11th Cir. 1995). The court notes that the word "immediate" as used in the context of the required showing for causal connection likely means having a "direct bearing" or a "close relationship" rather than being proximate in time. *See Random House Dictionary of the English Language* 956 (2d ed. 1987). The court comes to this conclusion based on the use of this term

8

in the *Davis* case. In *Davis*, the term was used in the same sense as the term "motivating factor" and "but for." *Id.* In fact, in the defendant's brief, the term is used alternatively with "motivating factor." This argument goes to the weight of the evidence. It is nothing more than a contention that the plaintiff's evidence is not substantial enough to create an issue of fact. The court, however, finds that the plaintiff has submitted evidence which, viewed in the light most favorable to the plaintiff, could convince a jury that the motivation for the adverse employment action was the plaintiff's participation in the 1989 FLSA lawsuit.

The defendant submits that the plaintiff's application was rejected because of the 2002 performance improvement plan and the 2004 Disciplinary Action. Both of these actions are related to the plaintiff's ability to supervise and lead others. However, the plaintiff has produced evidence that the defendant's reason is a pretext for retaliation. There is evidence in the record – Ms. Curry's deposition testimony – that the plaintiff had the most supervisory and training experience of all the applicants. There is also evidence in the record that one of the internal applicants was allowed to go forward in the application process with a Disciplinary Action for wrecking a fire truck. Furthermore, that candidate's actions resulted in only eight-hours unpaid leave, while the plaintiff's actions resulted in 64 hours of unpaid leave. Thus, the defendant has produced evidence that the adverse employment decision was taken for other reasons, and the issue will be squarely before the jury.

9

The court finds that the plaintiff has proffered sufficient evidence to raise a genuine issues of fact on his retaliation claim, and the defendant's motion for summary judgment must be denied.  An order reflecting this opinion will be entered.

ENTER:

  *s/ Leon Jordan*  
United States District Judge